In re Wendell and Julia
BLOUNT, Debtors.

Pike County National Bank, Plaintiff,

v.

Ronald L. Whittington, Trustee, Wendell Blount, Julia Blount, Pamela Magee, Trustee in Bankruptcy for LCD Corp., Stephen P. Livingston, Trustee in Bankruptcy for Wendell and Julia Blount, and General Star Indemnity Company, Defendants.

Pike County National Bank, Plaintiff,

v.

Bobby Robertson, Wendell Blount and
Daniel Blount, Defendants,

Wendell Glenn Blount, Plaintiff,

v.

Pike County National Bank, Ronald Whittington, Trustee, and Nina S. Tollison, Substituted Trustee, Defendants.

Bankruptcy No. 91–21671.
Adversary No. 99–1079.

United States Bankruptcy Court,
N.D. Mississippi.

July 11, 2000.

**120**

Paul M. Moore, Jr., Calhoun City, MS, Stephen K. Peters, Baton Rouge, LA, for debtors.

Louis J. Wade, Overland Park, KS, for trustee.

Julia Blount, Calhoun City, MS, pro se.

Wendell Blount, Calhoun City, MS, pro se.

William K. Duke, S.T. Rayburn, Oxford, MS, for defendants.

Grady Tollison, Oxford, MS, for plaintiffs.

Stephen P. Livingston, New Albany, MS, pro se.

Jeffery M. Navarro, Aberdeen, MS, pro se.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for partial summary judgment filed by Pike County National Bank ("PCNB") against Wendell Blount as both plaintiff and defendant, against Julia Blount as defendant, and against Bobby Robertson as defendant; a response thereto having been filed by Wendell Blount and Julia Blount; and the court, having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

By an order of this court, dated July 30, 1999, three separate adversary proceedings in this bankruptcy case were consolidated under Adversary Proceeding No. 99–1079. Before addressing the motion for partial summary judgment, a brief review of each proceeding, as well as, the relief requested therein, is in order:

### ADVERSARY PROCEEDING NO. 99–1079

This proceeding was initiated by a complaint for judicial foreclosure originally filed by PCNB in the Chancery Court of Calhoun County, Mississippi (Cause No. 92–271). In this cause of action, which was removed to the bankruptcy court, PCNB seeks court approval to foreclose its lien on a 155 acre tract of property, owned by the Blounts, on which it holds a deed of trust. The Blounts conveyed this property shortly before bankruptcy to LCD Corpo-

ration. After the Blounts filed bankruptcy cases respectively in May and June of 1991, which were subsequently consolidated, the court set aside the transfer to LCD Corporation and ordered the re-vestment of the property in the Blounts. (*See:* Order entered November 24, 1992, in Adversary Proceeding No. 91–2246.) After the bankruptcy filings, but before the 155 acre tract was re-vested in the Blounts, a fire loss occurred destroying a home being constructed on the property. This loss was covered by an insurance policy in the amount of $800,000.00, issued by General Star Indemnity Company (GenStar). PCNB as a lien holder made demand on GenStar for payment of the policy proceeds. GenStar's refusal to pay spawned a complaint by PCNB in the Chancery Court of Calhoun County. Judge Donald Grist issued an opinion, dated September 14, 1994, wherein he found that PCNB possessed an equitable lien against the proceeds of the insurance policy to the extent of the amount of the debt assumed by LCD Corporation. Finding that GenStar was not guilty of "bad faith," the court denied punitive damages, as well as, attorney fees. The court awarded PCNB a judgment in the amount of $675,602.78, plus costs. Following an appeal by GenStar, The Mississippi Supreme Court affirmed the judgment in all respects except as to the failure to award attorney fees to PCNB. The matter was remanded to the Chancery Court for the exclusive purpose of the assessment of said fees. PCNB requested an award in the sum of $70,539.79. Judge Grist, in a judgment dated October 23, 1998, noted that a total of $763,135.68, had already been paid by GenStar pursuant to the policy. Accordingly, he limited the assessment of fees to the balance remaining on the $800,000.00 policy for an additional award to PCNB of $36,864.32.

Related to the GenStar litigation is Adversary Proceeding No. 94–1262, filed on September 29, 1994, by the Chapter 7 trustee appointed in the Blount cases. In this proceeding, the trustee made demand for any insurance proceeds that might remain after the satisfaction of the demand by PCNB. As stated hereinabove, all of the insurance proceeds, totaling $800,000.00, have now been applied to the PCNB debt. Accordingly, Adversary Proceeding No. 94–1262 has now been dismissed by a separate order.

The original complaint for judicial foreclosure filed by PCNB has been held in abeyance pending the resolution of the GenStar insurance litigation. Now that the matter has been finally resolved, PCNB has filed its motion for summary judgment seeking authority to conduct a judicial foreclosure of its deed of trust encumbering the 155 acre tract in order to satisfy the remaining debt owed by the Blounts to PCNB.

### ADVERSARY PROCEEDING
### NO. 96–1166

In this adversary proceeding, filed June 14, 1996, PCNB seeks judgment against Wendell Blount, Daniel Blount and Bobby Robertson for the alleged wrongful cutting and removal of timber from the aforementioned 155 acre tract of land which is encumbered by the PCNB deed of trust. All three defendants were properly served, but only Bobby Robertson filed an answer. Defaults were entered against Wendell Blount and Daniel Blount, but the court withheld the entry of default judgments until all of the issues involved in the consolidated adversary proceedings could be considered. Robertson, appearing pro se, also responded to interrogatories propounded by PCNB. Robertson's admissions in his answer, as well as, his responses to interrogatories form the basis of

PCNB's motion for partial summary judgment as to its claim against Robertson.

### ADVERSARY PROCEEDING
### NO. 95-1330

This proceeding was originally filed in the Calhoun County Chancery Court on March 13, 1995. It was removed to the United States District Court on March 16, 1995, and then referred to the bankruptcy court on November 29, 1995. In this matter, Wendell Blount, as plaintiff, seeks to enjoin PCNB from foreclosing on a 2.21 acre tract of land located in Calhoun County, Mississippi. Blount, the owner of the property, alleges that his signature was forged on the PCNB deed of trust. The deed of trust, dated December 14, 1989, reflects that it secures the payment of a promissory note in the amount of $80,450.00. Conditioned upon Blount's depositing a $1,000.00 cash bond with the Calhoun County Chancery Clerk, which was done, the Chancery Court initially enjoined the foreclosure. In its motion for partial summary judgment, PCNB seeks the dissolution of the injunction and the authority to foreclose its deed of trust on the 2.21 acre tract of land.

### III.

The material facts, to which PCNB alleges there are no disputes, were established through the Blounts' failure to respond to requests for admissions propounded by PCNB. The Blounts responded to the factual allegations set forth in the motion for summary judgment and simultaneously filed a motion to amend or withdraw their responses to the requests for admissions.

PCNB propounded discovery to the Blounts, including the aforesaid requests for admissions, on August 12, 1999. Consequently, responses were due September 14, 1999. Following a status conference, the court previously set the discovery deadline in this proceeding for September 20, 1999. Responses to other outstanding discovery, as well as, the requests for admissions were filed by the Blounts on October 4, 1999, fourteen days after the close of discovery and twenty days after the response due date for the requests for admissions.

Rule 36 of the Federal Rules of Civil Procedure, made applicable in this proceeding by Rule 7036 of the Federal Rules of Bankruptcy Procedure, provides that each matter to which an admission is requested is "admitted unless, within thirty days after service of the request...the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Since the responses to the requests for admissions were filed by the Blounts some twenty days late, the court finds that the factual issues to which admissions were requested are now deemed admitted pursuant to Rule 36(a). The effect of an admission under Rule 36 is explained in subpart (b) of the rule which is set forth for reference purposes as follows:

**(b) Effect of Admission.**

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this rule is for the purpose of the

pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

In *American Automobile Association v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117 (5th Cir.1991), the Fifth Circuit had occasion to review the parameters of a court's authority to allow the withdrawal or amendment of responses to requests for admissions. Although the case focused on the ability of a party to request a withdrawal of an admission *after* trial, the court first examined F.R.C.P. 36(b) in general and found as follows:

> [W]hile the district court has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercised within the bounds of [the Rule 36(b) ] two-part test: 1) the presentation of the merits must be subserved by allowing withdrawal or amendment; and 2) the party that obtained the omissions must not be prejudiced in its presentation of the case by their withdrawal.

*Id.* at 1119.

Concerning the second part of the aforementioned test, the Fifth Circuit found that "the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Id.* at 1120. Once the trial has begun, the court should not permit the withdrawal or the amendment of an admission unless the failure to do so would cause "manifest injustice." *Id.* Since the trial has not yet begun in the matter presently before this court, the more relaxed standard of "special difficulties" as opposed to "manifest injustice" applies.

As noted above, Rule 36(b), as interpreted by the Fifth Circuit in *American Automobile Association v. AAA Legal Clinic of Jefferson Crooke, P.C.*, provides "considerable discretion" to the court as to whether the amendment or withdrawal of admission responses should be permitted.

Despite some confusion raised in the Blounts' response to PCNB's motion for summary judgment, the court is convinced that the forgery allegations apply *only* to the December 14, 1989, deed of trust, which encumbers the 2.21 acre tract of land. In their response to the motion for summary judgment, the Blounts appeared to assert that the December 4, 1989, deed of trust, which encumbers the 155 acre tract of land, also bears a forged signature. In reviewing the pleadings contained in the files of these three consolidated adversary proceedings, the court finds that Wendell Blount first raised the issue of forgery, concerning the deed of trust encumbering the 2.21 acre tract of land on March 3, 1995, when he filed his state court action to enjoin its foreclosure. The court could find no pleadings, other than in the response to PCNB's motion for summary judgment, wherein Blount raised any questions concerning the veracity of his signature on the deed of trust which encumbers the 155 acre tract of land. The court could also find no pleadings wherein Blount even raised a defense against PCNB's attempt to judicially foreclose the deed of trust encumbering the 155 acre tract of land. Accordingly, the court concludes that the Blounts' motion to amend or withdraw their responses to the requests for admissions should be denied as to all admissions which relate to PCNB's right to foreclose its lien on the 155 acre tract of land. The amendment or withdrawal of admission responses cannot be permitted to promote the presentation of the merits of allegations which have yet to

be properly raised in the pleadings. As to the foreclosure of this particular deed of trust, the first part of the Rule 36(b) test cannot be met.

Since all of the admissions relating to the 155 acre tract of land are now admitted and deemed conclusively established, all assertions of fact in PCNB's motion for summary judgment which rely on these admissions are now undisputed. Conversely, the Blounts' motion to withdraw or amend their responses to the requests for admissions is well taken as to those responses which relate to the allegation that Wendell Blount's signature on the deed of trust encumbering the 2.21 acre tract of land is forged. The court finds that the presentation of the merits of the forgery allegation, which was first raised in Blount's state court injunction action, would be subserved by allowing the withdrawal or amendment of the admission responses. In addition, the court finds that PCNB will not be prejudiced in its presentation of its case by the withdrawal or amendment of these responses because it clearly has known of this forgery allegation for several years. By a separate order, discovery will be reopened for a limited period, pertaining solely to the issue of the authenticity of Blount's signature on the deed of trust encumbering the 2.21 acre tract of land.

### IV.

As noted above, PCNB's motion for partial summary judgment as it relates to the defendant Bobby Robertson is premised on admissions by Robertson set forth in his answer to the complaint and in his responses to interrogatories. For reference purposes, Robertson's admissions are set forth as follows:

#### Complaint Paragraph No. 8:

On information and belief, in the fall of 1995, Wendell G. Blount and Daniel Blount directed Bobby Robertson to cut, sale [sic], remove, damage, or otherwise dispose of or waste timber, paper wood, pulpwood, or saw logs.

#### Answer:

Answering defendant, Bobby Robertson, admits that he did, cut, saw, and remove damaged timber, commonly referred to as "bug timber" from the property owned by Daniel Blount, but this defendant is unfamiliar with the exact description of where that property was located, admits that he then turned and sold it as per his instructions to McNeer Timber Company who directed it and was directed by him to issue a check to Daniel Blount for Daniel Blount's part of the timber.

#### Interrogatory No. 10:

If you had permission and/or authorization from Pike County National Bank to clear the timber on the property in question, describe the basis of this permission, the specific manner in which you contend that you obtained such authorization and identify all persons having knowledge of such authorization and all documents supporting or relating to such authorization.

#### Response:

I admit that I never contacted Pike County National Bank, but would state that Wendell Blount and Daniel Blount informed me that they had permission and ownership of the land to cut and remove the timber.

#### Interrogatory No. 11:

With respect to the clearing of the Byars place property and the destruction of trees on the property, please give the following information:

a) What do you claim to be the justification for you to take such action;

b) Who was responsible for the clearing of the property and the removal of trees from the property;

c) Who actually sold the timber;

d) To whom was the timber sold; and

e) How much was the timber sold for.

*Response:*

I would state that Mr. Wendell Blount and/or Daniel Blount both told me that I could cut and remove the timber. The timber was in a state of being destroyed by pine beetles, and I was asked by them to cut and remove an area large enough to keep the pine beetles from spreading to other people's land. As to who actually sold the timber, I delivered the timber to a timber buyer who then made a check out to me and I then made the check out to Mr. Blount. As far as knowing how much the timber sold for, it would be around $15,000 that went to Mr. and Mrs. Blount. This is the best I can remember and may be a little bit more.

*Request for Admission No. 3:*

Admit that the defendant Bobby Robertson, by and through his employees and/or agents, entered the Byars place property, without permission from Pike County National Bank and cut, cold [sic], removed, damaged, and otherwise disposed of timber, paper wood, pulp wood, and saw logs.

*Response:*

Defendant Bobby Robertson admits that he went on the Byars place and removed timber, but does not know anything about having required permission from Pike County National Bank, but did so as agent for the owners, as he understood it, of the property, which was at the time Mr. Daniel Blount and/or Wendell G. Blount.

In his answer to paragraph 8 of the complaint, Robertson asserts that he sold the timber to McNeer Timber Company who then issued a check to Daniel Blount for "Daniel Blount's part of the timber." In his response to interrogatory no. 11, Robertson states that he "delivered the timber to a timber buyer who then made a check out to me and I then made the check out to Mr. Blount." It is unclear whether Robertson retained a portion of the proceeds of the timber sale or whether the entire proceeds flowed from McNeer through Robertson to Daniel Blount. Robertson was surely compensated for his services, but it is unclear as to exactly how this occurred. Regardless, the issue of whether or not Robertson personally profited from the removal of the timber is not a fact which, in the opinion of the court, must be proven in order for PCNB to prevail on its complaint. PCNB was deprived of the value of the timber on which it held a lien. Although there may be an issue of fact as to how Robertson was compensated, it is a non-material fact for summary judgment purposes.

In order for summary judgment to be granted, the court must conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Robertson's admissions in this case establish that he cut the timber, but that he did so at the request and with the permission of the land owner. The court has been shown no authority to the effect that liability may be imposed against an apparent independent contractor, hired by the land owner, to cut timber on the land owner's property when the land owner fails to remit the sales proceeds to the creditor holding a security interest in the timber. Accordingly, the court finds that PCNB is not, at this time, entitled to a judgment as a matter of law against Robertson. PCNB will be allowed a period of ten days within which to notify the court whether it desires to submit a memorandum of authorities on this issue

or whether it simply chooses to proceed to trial against Robertson. If PCNB elects to provide a memorandum of authorities, an additional thirty days after the ten day period will be allowed for the preparation and submission of the said memorandum. If PCNB elects not to submit a memorandum, the motion for partial summary judgment as to Robertson will be denied.

Finally, as to the "timber cutting" proceeding, the court could find no information relating to the amount of damages allegedly sustained by PCNB other than the response offered by Robertson that approximately $15,000.00 was paid to Mr. and Mrs. Blount. At the time the complaint was filed, the value of the cut timber was apparently unknown. Consequently, PCNB specifically requested that it be allowed to determine at a later date the stumpage and amount of damages. Before any judgment can be entered, damages must be proved. This may be accomplished through the submission of affidavits or may be presented in open court if the complaint is brought on for trial against Robertson. Since this cause of action is an attempt by PCNB to recover the proceeds of collateral on which it held a lien, the amount of any judgment will be limited to the amount of the debt which remains outstanding. If the Blounts' obligation to PCNB is fully satisfied by the liquidation of other assets, such as the foreclosure of the lien encumbering the 155 acre tract of land, PCNB will have no remaining damages insofar as the "timber cutting" proceeding is concerned.

## V.

The court directed PCNB to submit proof establishing the remaining amount of debt owed to it by the Blounts. The court has now received and reviewed the affidavit of Ira Richardson, Vice–President of PCNB, as well as, the attached accounting.

The court finds that the debt owing to PCNB from the Blounts is $27,214.67, as of September 30, 1999, plus additional per diem interest at the contract rate. In addition, PCNB will be allowed to recover for any additional attorney fees and expenses incurred up to the date of the final satisfaction of the debt. These additional fees will include the attorney fees and costs incurred in foreclosure of the 155 acre tract. PCNB shall submit an updated accounting to reflect the additional fees and expenses which have accrued since September 30, 1999, as well as, the proceeds realized from the foreclosure. Any surplus remaining from the foreclosure proceeds after the full satisfaction of the PCNB debt shall constitute property of this consolidated estate and shall be delivered to the Chapter 7 trustee for distribution in keeping with the priorities set forth in the Bankruptcy Code.

## VI.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

## VII.

Based on the foregoing analysis, the court finds that no genuine issues of material fact exist as to PCNB's complaint for judicial foreclosure of its deed of trust, dated December 4, 1989, encumbering the 155 acre tract of land.

The Blounts' motion to amend or withdraw their responses to the requests for admissions will be granted only as to those responses which relate to allegations that the deed of trust, dated December 14, 1989, encumbering the 2.21 acre tract of land, bears a forged signature. Accordingly, genuine issues of material fact exist concerning this deed of trust, and the motion for partial summary judgment, as it relates to this tract, is not well taken.

The motion for partial summary judgment as to the defendant, Bobby Robertson, will be temporarily held in abeyance.

An order will be entered contemporaneously herewith.